# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sergey Repeshchuk,

                              Plaintiff,

                                                  Civ. No. 07-2017 (RHK/AJB)
                                                  **MEMORANDUM OPINION AND
                                                  ORDER**

v.

Alberto Gonzales, *et al..,*

                              Defendants.

Matthew M. Armbrecht, Guzior Armbrecht Maher, Minneapolis, Minnesota, for Plaintiff.

Mary Jo Madigan, Assistant United States Attorney, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

In this action, Plaintiff Sergey Repeshchuk asks the Court to adjudicate his naturalization application under 8 U.S.C. § 1447(b) or, in the alternative, seeks remand to the Bureau of Citizenship and Immigration Services ("CIS") with instructions to adjudicate his application within 15 days.  Defendants now move to dismiss, arguing that the Court lacks subject-matter jurisdiction over this case; in the alternative, Defendants argue that the matter should be remanded to CIS without any time constraints for adjudicating Repeshchuk's application.[1]  For the reasons set forth below, the Court concludes that

---

[1] The title of Defendants' Motion also suggests that they seek summary judgment, but they do not discuss summary judgment in their Motion papers.

subject-matter jurisdiction over this action exists, but that the matter should be remanded.[2]

## BACKGROUND

The material facts in this case are undisputed.  On April 7, 2003, Repeshchuk, who is a lawful permanent resident alien of the United States, filed a naturalization application (the "Application") with CIS.  On October 29, 2003, pursuant to 8 C.F.R. § 335.2, CIS interviewed Repeshchuk concerning his Application, during which he passed the required English-language-proficiency evaluation and a test concerning his knowledge and understanding of United States government and history.  See 8 U.S.C. § 1423(a)(1)-(2); 8 C.F.R. § 335.2.  The only remaining hurdle for the Application to be finally adjudicated, therefore, was a Federal Bureau of Investigation ("FBI") name check.  See 8 C.F.R. § 335.2(b).[3]  That name check has been pending since the date of Repeshchuk's interview – *i.e.,* almost four years.  Repeshchuk has repeatedly asked CIS about the status of his Application, but each time he has simply been told that his name check remains pending and that CIS cannot finally adjudicate the Application without the results of the name check.[4]

As a result of the foregoing, Repeshchuk commenced the instant action, requesting that the Court either adjudicate his Application or, in the alternative, remand the matter to

---

[2] Having concluded that oral argument on Defendants' Motion will not materially assist the Court in resolving the issues raised therein, the hearing in this matter scheduled for August 22, 2007, is **CANCELED**.

[3] 8 C.F.R. § 335 sets forth a multiple-step background-check process for naturalization applicants, of which the FBI name check is but one step.  Here, however, all steps in the background check – other than the FBI name check – apparently have been completed.

[4] In one instance Repeshchuk allegedly was told that his "case had been closed" (Repeshchuk Decl. ¶ 11), but there does not appear to be any dispute that his Application remains pending before CIS.

CIS with instructions to adjudicate the Application within 15 days.  Defendants[5] now move

to dismiss this case for lack of subject-matter jurisdiction or, in the alternative, ask the

Court to remand this case to CIS without limitation on how quickly it must adjudicate the

Application.

## ANALYSIS

**I.      The Court enjoys subject-matter jurisdiction.**

Pursuant to 8 U.S.C. § 1446(a), the Secretary of Homeland Security may designate

CIS employees to conduct "examinations" of applicants for naturalization and determine

whether such applications should be granted or denied.  In arguing that this Court has

jurisdiction, Repeshchuk relies on 8 U.S.C. § 1447(b), which provides that:

> If there is a failure to make a determination under section 1446 of this title
> before the end of the 120-day period after the date on which the examination is
> conducted under such section, the applicant may apply to the United States
> district court for the district in which the applicant resides for a hearing on the
> matter.  Such court has jurisdiction over the matter and may either determine the
> matter or remand the matter, with appropriate instructions, to the Service to
> determine the matter.

There is no dispute that more than 120 days have elapsed since Repeshchuk's interview.

Indeed, nearly *four years* have elapsed since Repeshchuk's interview on October 29, 2003.

Defendants argue, however, that the "examination" contemplated by Section 1447(b)

is not the applicant's interview, but rather is the entire process of adjudicating a

naturalization application, including completion of the requisite background check and FBI

---

[5] Namely, Alberto Gonzales, the Attorney General of the United States; Michael Chertoff, the Secretary of the Department of Homeland Security; Robert S. Mueller, III, the Director of the FBI; Emilio Gonzalez, the Director of CIS; and Denise Frazier, the Director of the St. Paul Field Office of CIS.

name check.  Because CIS has not received the results of Repeshchuk's name check,

Defendants argue that the 120-day period in Section 1447(b) has not begun to run and,

hence, the Court lacks subject-matter jurisdiction over this case.  The Court does not agree.

In support of their argument, Defendants rely on Danilov v. Aguirre, 370 F. Supp. 2d

441 (E.D. Va. 2005).  The Danilov court held that an "examination" for purposes of Section

1447(b) "is not a single event, but instead is essentially a *process* the agency follows to

gather information concerning the applicant," including the FBI name check.  Id. at 443

(emphasis in original).  Under Danilov, therefore, the 120-day period in Section 1447(b)

does not commence running until CIS receives the results of the name check.

Danilov, however, has been heavily criticized by district courts across the country,

and the undersigned has explicitly rejected it on at least one occasion.  See Eisa v. United

States Citizenship & Immigration Servs., Civ. No. 05-773, Doc. No. 37 (Kyle, J., adopting

Report and Recommendation of Boylan, M.J.); see also, e.g., Hussein v. Gonzales, 474 F.

Supp. 2d 1265, 1267-68 (M.D. Fla. 2007) ("the vast majority of district courts have

rejected Danilov and expressed a contrary view") (collecting cases); Al-Kudsi v. Gonzales,

No. CV 05-1584-PK, 2006 WL 752556, at *2 (D. Or. Mar. 22, 2006); Shalan v. Chertoff,

No. 1:05-CV-10980, 2006 WL 42143, at *1 (D. Mass. Jan. 6, 2006); El-Daour v. Chertoff,

417 F. Supp. 2d 679, 683 (W.D. Pa. 2005).  Under the majority view, the term

"examination" in Section 1447(b) means the applicant's *interview* with CIS, not the entire

information-gathering process.  E.g., Mohsen v. Gonzales, Civ. No. 07-237, 2007 WL

2137933, at *3 (D.N.J. July 18, 2007) ("'examination' refers to a specific event, the

applicant's interview with CIS, rather than [an] ongoing process").

Defendants note that, approximately six weeks ago in <u>Walji v. Gonzales</u>, 489 F.3d

738 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit adopted

<u>Danilov</u>'s approach; they urge the Court to reject its prior decision in <u>Eisa</u> and the

overwhelming majority of federal courts across the country in favor of <u>Walji</u> and <u>Danilov</u>.

Of course, <u>Walji</u> – the only Court of Appeals decision addressing the issue – has already

been criticized in much the same fashion as <u>Danilov</u>.  <u>See, e.g.</u>, <u>Alghawi v. Gonzales</u>, No.

C07-586MJP, 2007 WL 2288056, at *1 (W.D. Wash. Aug. 6, 2007); <u>Ouili v. Dep't of</u>

<u>Homeland Sec.</u>, No. 07-11749, 2007 WL 2259335, at *3 (E.D. Mich. Aug. 2, 2007);

<u>Mohsen</u>, 2007 WL 2137933, at *2-3.  The Court agrees with these decisions, and those

rejecting <u>Danilov</u>, for several reasons.

First, in the Court's view, Section 1447(b) unambiguously supports the conclusion

that "examination" means only the applicant's interview with CIS.  The statute provides that

the district court shall have jurisdiction 120 days after "the date on which the examination

is conducted."  8 U.S.C. § 1447(b).  The statute does not say "the date *or dates* within

which," but instead uses the phrase "the date on which," clearly referring to a single,

identifiable date.  As the court in <u>El-Daour</u> concluded, a "process" does not occur on one

particular and identifiable date.  417 F. Supp. 2d at 682.

Second, if the Court were to equate the term "examination" with "process," the

relevant statutory language would, in essence, be transformed into:  "the date on which the

process is conducted."  Such language would be ambiguous and would not provide a

cognizable date after which an applicant could apply to the district court for relief, because

the application "process" is ongoing and arguably is being "conducted" continuously.  <u>See</u>

id. at 681-82.  For example, an applicant would be unable to determine whether to apply to a

federal court for relief 120 days after the application was first submitted, or 120 days after

his interview, or 120 days after some other arbitrary point in the naturalization process.

The Court is unwilling to interpret the statute in such an ambiguous fashion.

Third, Defendants' interpretation of "examination" does not comport with CIS's own

regulations, which define "examination" and "investigation" as distinct events.  See Shalan,

2006 WL 42143, at *1.  Specifically, 8 C.F.R. § 335.1 – entitled "Investigation of

applicant" – states that CIS "shall conduct an investigation of the applicant," including a

review of pertinent records, police-department checks, a neighborhood investigation, and

an employment-background check.  Yet, 8 C.F.R. § 335.2 – entitled "Examination of

applicant" – specifies that, after submitting a naturalization application, an applicant:

> shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter.  The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization.  The applicant may request the presence of an attorney or representative . . . .

8 C.F.R. § 335.2(a).  Accordingly, CIS's own regulations contemplate an investigation,

encompassing a variety of background checks (including the FBI name check), separate and

apart from an examination, *which consists of an in-person interview of the applicant*.

Moreover, Section 335.2(b) – entitled "Completion of criminal background checks

*before* examination" (emphasis added) – mandates that CIS "notify applicants for

naturalization to appear before a [CIS] officer for initial examination on the naturalization

application only after [CIS] has received a definitive response from the Federal Bureau of

Investigation that a full criminal background check of an applicant has been completed."  In

other words, not only is the background check treated as a wholly separate occurrence from the in-person "examination," but CIS is required, under its own regulations, to receive notice of completion of the background check *before even conducting* the "examination." Accordingly, the regulations confirm the Court's conclusion that the term "examination" is equivalent to "interview" and is wholly distinct from the background check conducted pursuant to CIS's "investigation."

For all of these reasons, the Court adheres to its prior decision in <u>Eisa</u> and – <u>Walji</u> notwithstanding – continues to agree with those cases holding that federal-court jurisdiction exists over a naturalization application 120 days after the date of the applicant's *interview*, if the application has not been adjudicated in that time.  Here, there is no dispute that Repeshchuk's interview occurred more than 120 days ago and his Application has not been finally adjudicated.  Accordingly, the Court concludes that subject-matter jurisdiction exists under 8 U.S.C. § 1447(b).

## II.     The appropriate remedy is to remand this case to CIS.

Having determined that the Court enjoys subject-matter jurisdiction over this case, it must now decide whether to adjudicate the Application or remand it to CIS.  8 U.S.C. § 1447(b).[6]  Given the lengthy delay in adjudicating his Application, Repeshchuk urges the Court to schedule a hearing on the matter and adjudicate the Application itself.  (Mem. in Opp'n at 12-15.)  In the alternative, Repeshchuk requests that, if the Court opts to remand

---

[6] CIS currently lacks jurisdiction over Repeshchuk's Application, due to the pendency of this action.  <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1162 (9th Cir. 2004); <u>Castracani v. Chertoff</u>, 377 F. Supp. 2d 71, 73 (D.D.C. 2005).

the matter to CIS, it do so with instructions that CIS adjudicate the Application within 15 days.  (Id. at 17.)

Final adjudication of this matter, however, requires expertise that this Court does not possess.  See El-Daour, 417 F. Supp. 2d at 860.  Moreover, the Court believes that it would be inappropriate to adjudicate the Application without the requisite name check having been completed.  See 8 C.F.R. § 335.2(b); Essa v. United States Citizenship & Immigration Serv., Civ. No. 05-1449, 2005 WL 3440827, at *2 (D. Minn. Dec. 14, 2005) (Doty, J.) (noting that court was without power to adjudicate naturalization application when FBI background check had not been completed).  Finally, if the Court were to adjudicate Repeshchuk's Application, it would create an incentive for others to "flood the system" with similar actions in an attempt to "jump the line" and expedite their naturalization applications, to the detriment of others.  Accordingly, the Court concludes that rather than adjudicating the Application itself, the appropriate remedy is to remand this matter to CIS.

Moreover, the Court does not believe that placing an artificial time constraint on CIS to adjudicate the Application is either appropriate or advisable.  Nevertheless, "[b]ecause the [name] check has now been pending for [nearly] four years, remand to CIS without [any] instructions is not appropriate."  Kheridden v. Chertoff, Civ. No. 06-4792, 2007 WL 674707, at *5 (D.N.J. Feb. 28, 2007).  Accordingly, the Court will remand the matter to CIS with instructions to adjudicate the Application as expeditiously as possible, and it will require Defendants "to report to this Court, every [60] days, the status of [Repeshchuk's] name check and Defendants' efforts to obtain the results of the name check, including correspondence and any other relevant documents."  Id.

# CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss, Remand, or Enter Summary Judgment (Doc. No. 4) is **GRANTED IN PART** and **DENIED IN PART**.  This matter is **REMANDED** to CIS with instructions to adjudicate Repeshchuk's Application as expeditiously as possible.  Until the results of the FBI name check are received by CIS, Defendants are directed to report to this Court every 60 days, with specificity (attaching relevant documents as appropriate), the status of Repeshchuk's name check and Defendants' efforts to obtain the results thereof.  Once CIS receives the results of the name check, the Application shall be adjudicated as expeditiously as possible, but in no event later than 60 days after receipt of the name-check results.  Defendants shall notify this Court as soon as Repeshchuk's Application has been adjudicated.  The Court will retain jurisdiction over this matter to consider alternative remedies should these efforts prove fruitless.

Dated: August 15, 2007

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge